[Nos. 46151, 46286. En Banc. January 31, 1980.]

DAVID M. DUTIL, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.

THE STATE OF WASHINGTON, *Petitioner*, v. CHARLES G. STOCKWELL, *Respondent*.

THE STATE OF WASHINGTON, *Respondent*, v. SCOTT D. DORSEY, *Petitioner*.

*Wilford A. Anderson* of *Seattle–King County Public Defender Association* and *William S. Bailey, Public Defender,* for appellant Dutil, petitioner Dorsey, and respondent Stockwell.

*Norm Maleng, Prosecuting Attorney,* and *James A. Trujillo* and *Thomas L. Pugh, Deputies,* for State.

ROSELLINI, J.—In these three cases, we review rulings of superior court judges in hearings conducted pursuant to CrR 3.5, to determine the admissibility of statements of juveniles over the age of 12. In each case, the statement was given to police who questioned the juvenile in a custodial setting shortly after his apprehension.

In the Dutil and Dorsey hearings, it was found that, under all of the circumstances, the juveniles had been advised of and understood their rights to counsel and to remain silent, and that they had knowingly and intelligently waived those rights. In the Stockwell case, the court refused to consider whether the boy had understood and waived his rights, but held instead that because his mother

had not been invited to participate in the interrogation, his waiver was per se invalid.[1] It appears that in that case, the mother had been present, sitting about 12 feet away during the giving of the statement. The mother had consented to the interrogation. She had not been invited and did not request permission to participate in it.

At the hearing, young Stockwell was bright, alert and apparently at ease, even offering comforting words to the judge for a memory lapse. He acknowledged that before giving his statement, he had known, understood, and voluntarily waived his rights. In this court he does not deny that, if the "totality of the circumstances" test is applied, he knowingly and intelligently signed that waiver.

Likewise, the petitioners Dutil and Dorsey do not contest the sufficiency of the showing in their cases that, under the established test, they waived their rights. The three join in one contention in this court—that without the presence and assistance of a parent or other friendly adult, no juvenile should be deemed capable of knowingly and intelligently waiving his rights. For the sake of brevity, the three will be referred to herein as the petitioners.

██ This court has generally adhered to the principle that where the language of the state constitution is similar to that of the federal constitution, it will adopt that interpretation which is placed upon the provision by the United States Supreme Court. *Housing Authority v. Saylors*, 87 Wn.2d 732, 557 P.2d 321 (1976). It was so held with respect to the fifth amendment to the United States Constitution and article 1, section 9 of the Washington Constitution in *State v. Moore*, 79 Wn.2d 51, 483 P.2d 630 (1971), where we refused to extend the meaning of the state provision beyond that which had been accorded the Fifth Amendment by the United States Supreme Court.

---

[1]The court's reasoning was not so much that the presence of a parent would be helpful to the juvenile in making his decision whether to waive his rights, as that it would be of benefit to the parent in making him aware of his child's activities and their consequences and inciting him to begin the rehabilitative process at home.

While they urge that this court should find in our article 1, sections 9 and 22, not only a waivable right to remain silent and to have the assistance of counsel but also an unwaivable right to have some sympathetic person to advise them upon the question of waiver, the petitioners point to no language in those sections which would support such an extension. Const. art. 1, § 9, declares: "No person shall be compelled in any criminal case to give evidence against himself, . . ." The Fifth Amendment provides: ". . . nor shall [any person] be compelled in any criminal case to be a witness against himself, . . ." Const. art. 1, § 22, declares: "In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, . . ." Amendment 6 to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

Upon their face, these provisions do not require that before being questioned, a person must be advised, of rights and warned of the use that can be made of his statements; and they apply only to proceedings in court. However, the United States Supreme Court has determined that such advice and warning are necessary at the interrogation stage of a prosecution in order to enable a person to enjoy the rights given. *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). The petitioner would have us go further and hold that under no circumstances can the rights of a juvenile be waived without the aid of a parent, guardian or counselor.

The petitioners concede that the United States Supreme Court has held the "totality of the circumstances" test to be adequate for the protection of a juvenile's Fifth and Sixth Amendment rights. In *Fare v. Michael C.,* 442 U.S. 707, 61 L. Ed. 2d 197, 99 S. Ct. 2560 (1979), a 16 1/2–year–old boy taken into custody on suspicion of murder, was denied a request to see his probation officer, which he made after being advised of his right to counsel and his right to remain silent. He contended before the high court

that this request was tantamount to a request to confer with counsel. But the court pointed out that a probation officer does not perform the same function as counsel and could not be expected to give the juvenile the same advice that would be given by an attorney. It also held that such a request is not per se the expression of a desire to remain silent but rather is one of the circumstances which should be taken into account in determining whether a juvenile has knowingly and voluntarily waived his rights. The court said:

> This totality of the circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. See *North Carolina v. Butler* [441 U.S. 369, 60 L. Ed. 2d 286, 99 S. Ct. 1755 (1979)].

> Courts repeatedly must deal with these issues of waiver with regard to a broad variety of constitutional rights. There is no reason to assume that such courts—especially juvenile courts, with their special expertise in this area—will be unable to apply the totality of the circumstances analysis so as to take into account those special concerns that are present when young persons, often with limited experience and education and with immature judgment, are involved. Where the age and experience of a juvenile indicate that his request for his probation officer or his parents is, in fact, an invocation of his right to remain silent, the totality approach will allow the court the necessary flexibility to take this into account in making a waiver determination. At the same time, that approach refrains from imposing rigid restraints on police and courts in dealing with an experienced older juvenile with an extensive prior record who

knowingly and intelligently waives his Fifth Amendment rights and voluntarily consents to interrogation.

*Fare v. Michael C., supra* at 212–13.

This is the test adopted and approved by this court for juvenile court proceedings. *State v. Luoma,* 88 Wn.2d 28, 558 P.2d 756 (1977); *State v. Prater,* 77 Wn.2d 526, 463 P.2d 640 (1970).

The United States Supreme Court has also reaffirmed the total circumstances test in *North Carolina v. Butler,* 441 U.S. 369, 60 L. Ed. 2d 286, 99 S. Ct. 1755 (1979), overturning a state court's holding that the federal constitution requires an express waiver of rights and declaring that an "inflexible *per se* rule" is inappropriate.

We are shown no persuasive reason to take exception to the reasoning of the United States Supreme Court upon this matter. Under the totality of circumstances approach, the determination of whether a knowing and intelligent waiver has been made is the responsibility of the juvenile judge, who is presumably experienced in handling juvenile cases and who has the child and other witnesses before him, as well as the facts pertaining to the child's age, intelligence, education and experience. The circumstances in no two cases are the same. The presence of a parent or guardian in one case may be an inhibiting or coercive factor, where in another his presence may indeed be significant in helping the juvenile to decide whether to waive his rights. The petitioners would have us create a dogmatic rule, cloaking it in constitutional armor, and decreeing in advance that the presence of a parent or surrogate is essential to an intelligent waiver, without regard to the facts of the particular case.

The petitioners find themselves forced to admit that the presence of a parent or guardian who is not a lawyer would be of questionable efficacy, if the objective is an informed decision on the advisability of waiving rights. Actually, the child should be provided counsel, they say, whether or not he requests an attorney.

Studies which the petitioners have called to our attention indicate that juveniles often do not understand the full import of the exercise or waiver of their constitutional rights. This is not surprising. Indeed, we would be surprised if many adults can be said to have such comprehension. As this court held in *State v. Aiken,* 72 Wn.2d 306, 434 P.2d 10 (1967), the test is whether a person knew he had the right to remain silent, and that anything he said could be used against him in a court of law, not whether he understood the precise legal effect of his admissions. *Accord, State v. McDonald,* 89 Wn.2d 256, 571 P.2d 930 (1977). If a juvenile understands that he has a right, after he is told that he has that right, and that his statements can be used against him in a court, the constitutional requirement is met.

It is not claimed here that the officers who obtained statements from these petitioners failed to advise them of their rights or that they used unfair methods to obtain those statements. Nor is it claimed that the petitioners were subjected to any coercion other than that which is inherent in the custodial environment. A certain amount of such pressure is inescapable, at least under our present system of justice. The purpose of the *Miranda* advice and warnings is to dispel some of that coercion. *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

It appears to be the theory of the petitioners that one has a right to be told the advantages and disadvantages of exercising his rights. To date, such a right has not been found in the constitutional provisions relied upon. If sound public policy requires that such advice be given, that is a matter to be attended to by the legislature. If such a procedure is desirable to expedite the administration of justice, the court has the power to consider the promulgation of a rule to embody it. Such a course should be taken, of course, only after giving an opportunity to all interested parties to present their views and provide information upon the subject. Either a statute or rule, if it proved inefficacious or

unwise, would be open to expeditious amendment, repeal, or abrogation, an advantage which a constitutional limitation does not have.

The legislature has taken cognizance of the needs of children with respect to parental and legal assistance. Special provision for the presence of counsel, if desired, and for particular legal advice is made in several sections.[2] RCW 13.40.140(9) and (10) provide that only a parent or guardian can waive the rights of a child under 12. While the chapter does not expressly provide for waiver at the interrogation stage of the proceedings, it does, in RCW 13.40-.140(8), provide that an extrajudicial statement which

---

[2]Statutes and court rules in effect at all pertinent times here made the following provisions for rights to counsel in juvenile offense proceedings:

"(6) The right to counsel shall inure prior to the initial interview for purposes of advising the youth as to whether he or she desires to participate in the diversion process or to appear in the juvenile court. The youth may be represented by counsel at any critical stage of the diversion process, including intake interviews and termination hearings. The youth shall be fully advised at the intake of his or her right to an attorney and of the relevant services an attorney can provide. For the purpose of this section, intake interviews shall mean all interviews regarding the diversion agreement process.

"The youth shall be advised that a diversion agreement shall constitute a part of the youth's criminal history as defined by RCW 13.40.020(6). A signed acknowledgment of such advisement shall be obtained from the youth, and the document shall be maintained by the diversionary unit together with the diversion agreement, and a copy of both documents shall be delivered to the prosecutor if requested by the prosecutor. The supreme court shall promulgate rules setting forth the content of such advisement in simple language." RCW 13.40.080(6).

"RULE 6.2

"RIGHT TO CONSULT WITH A LAWYER

"(a) Advice of Right to Representation by Lawyer. A juvenile found eligible for diversion shall, prior to the initial interview with the diversion unit, be advised of his or her right to consult with a lawyer concerning the juvenile's decision to enter into a diversion agreement or to appear in juvenile court.

"(b) Appointment of Lawyer. The court shall appoint a lawyer for any juvenile who is financially unable to obtain a lawyer for the consultation if the juvenile does not waive that right pursuant to Rule 6.3.

"(c) Retained Lawyer During Diversion Process. A juvenile may be represented by a retained lawyer during the diversion process in accordance with RCW 13.40.080(6).

would be constitutionally inadmissible in a criminal proceeding shall not be received in evidence at an adjudicatory

---

"RULE 6.3

"WAIVER OF RIGHT TO LAWYER

"A waiver containing the following statements and in substantially the following form shall be read by, signed by, and a copy given to a juvenile who waives the right to consult with a lawyer before an initial interview with a diversion unit:

"Waiver of Lawyer

"1. I know that I can talk to a lawyer about whether I should enter into a diversion process and will not have to pay for one if I cannot afford it.

"2. I know that a lawyer can look at my police reports, tell me about the law, help me understand my rights, and help me decide whether I should enter into a diversion process or go to juvenile court.

Dated_____          Dated_____

_____            _____
Parent or Guardian (optional)                   Juvenile

"The above statement was read to the juvenile and signed by the juvenile on the date indicated.

_____
Representative of Diversion Unit"

JuCR 6.2, 6.3.

"(1) A youth shall be advised of his or her rights when appearing before the court.

"(2) A youth and his or her parent, guardian, or custodian shall be advised by the court or its representative that the youth has a right to be represented by counsel at all critical stages of the proceedings. Unless waived, counsel shall be provided to a youth, who is financially unable to obtain counsel without causing substantial hardship to himself or herself or the youth's family, in any proceeding where the youth may be subject to transfer for criminal prosecution, or in any proceeding where the youth may be in danger of confinement or partial confinement. The ability to pay part of the cost of counsel shall not preclude assignment. In no case shall a youth be deprived of counsel because of a parent, guardian, or custodian refusing to pay therefor. The youth shall be fully advised of his or her right to an attorney and of the relevant services an attorney can provide." RCW 13.40.140(1) and (2).

Subdivision (8) of this section also implicitly recognizes the juvenile's right to counsel at interrogations. It provides:

"(8) A juvenile shall be accorded the privilege against self–incrimination. An extrajudicial statement which would be constitutionally inadmissible in a criminal proceeding shall not be received in evidence at an adjudicatory hearing over objection. Evidence illegally seized or obtained shall not be received in evidence over objection at an adjudicatory hearing to prove the allegations against the child. An extrajudicial admission or confession made by the child out of court is

hearing, over objection. Such a statement necessarily involves waiver of the right to remain silent. Under RCW 13.40.140(9), therefore, a valid waiver for a child under 12 must be made by his parent, guardian or custodian.

Thus, it is only where a juvenile over the age of 12 is involved that the presence of a parent, guardian or custodian is not invariably necessary to render a waiver valid. The legislature apparently recognized that a youngster nearing the age of majority is more likely to have the ability to comprehend advice given him about his rights. This is particularly true, of course, where he has had previous experience in the juvenile court. As with adults, the question whether his waiver was intelligent becomes one of fact rather than one of presumption.

The petitioners cite cases from several jurisdictions where courts have held that a parent or counsel must be present at a juvenile interrogation.[3] These courts have recognized the difficulty of ascertaining whether a child has knowingly and intelligently waived his constitutional rights, and have attempted to meet the problem by prescribing the presence of a parent or an adult friend or counselor.

Some of these opinions have recognized that the solution may create its own problems. In any event, we cannot perceive that the courts can escape the totality of circumstances test, even where a parent is present, since this is the

---

insufficient to support a finding that the child committed the acts alleged in the information unless a corpus delicti is first established." RCW 13.40.140(8).

"RULE 9.2

"ADDITIONAL RIGHT TO REPRESENTATION BY LAWYER

"(a) Retained Lawyer. Any party may be represented by a retained lawyer in any proceedings before the juvenile court.
"...
"(c) Juvenile Offense Proceedings. The court shall provide a lawyer at public expense in a juvenile offense proceeding when required by RCW 13.40.080(6), RCW 13.40.140(2), or Rule 6.2." JuCR 9.2(a) and (c).

[3]*State in Interest of Dino*, 359 So. 2d 586 (La. 1978); *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977); *Lewis v. State*, 259 Ind. 431, 288 N.E.2d 138 (1972); and *Freeman v. Wilcox*, 119 Ga. App. 325, 167 S.E.2d 163 (1969).

test laid down by the United States Supreme Court and the presence of a parent or counsel is just one of the circumstances bearing upon the question whether a confession was freely and voluntarily given.

We are aware that there are many areas of law in which a minor is deemed to lack capacity to make decisions or enter into transactions. For this reason, the appointment of a guardian ad litem is required in civil proceedings. This is not a constitutional incapacity, but one decreed by statute or court rule. A minor is capable, however, of committing acts which constitute offenses under the juvenile code, a law designed with his special needs and limitations in mind. The legislature has found that a child under 12 is incapable of intelligently waiving his rights in a juvenile proceeding, but it has chosen to leave that question to be determined upon the facts of the individual case, where the juvenile is closer to the age of majority. We have not been shown that this method of determination has produced injustice in the juvenile courts, or that it has resulted in the validation of false or coerced confessions.

Until we are shown that additional safeguards are necessary to protect children from those evils which the constitutional provisions were meant to guard against, we adhere to the rule that the validity of a waiver is to be established by a careful examination of all of the relevant circumstances.

The rulings in the cases of Dutil and Dorsey are affirmed. In the case of Stockwell, the order of suppression is reversed.

UTTER, C.J., STAFFORD, WRIGHT, BRACHTENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., and LOY, J. Pro Tem., concur.