[No. 12209–6–I.   Division One.   September 4, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. BRIAN
ROBERT DAVIS, *Appellant.*

*Reaugh & Prescott* and *Carol Hepburn,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Reba Weiss, Deputy,* for respondent.

RINGOLD, J.—Brian Robert Davis was found guilty of malicious mischief in the third degree at a juvenile court fact–finding hearing. He appeals, contending the trial judge impermissibly relied on his post–arrest silence in reaching a finding of guilt. We reverse.

Two Federal Way residents observed one of a group of juveniles shoot out a streetlight with an air pistol. The two gave chase but abandoned the effort and called the police. After the police arrived and detained a group of juveniles some distance away, one of the residents identified Davis as the offender. The police arrested Davis, who at that time made no statement implicating himself or anyone else. The record fails to indicate whether Davis was advised of his rights as required by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

Davis and the other members of the group testified that they were walking in the area when the incident occurred and saw an unidentified boy with an air rifle. At the end of the State's cross examination, the trial judge asked Davis whether he had given this exculpatory story to the police upon his arrest. Davis responded that he had not. During closing argument, the prosecutor made reference to the failure of Brian and the other boys to relate the exculpatory information to the police at the time of their detention and Brian's arrest. In making its finding of guilt, the trial court stated:

> The officers then stopped the parties, boys, and talked to them, ultimately one of them was arrested. At the time of the arrest there was no outburst of indignation by the other teenagers, and I find that a little bit strange, frankly. I know they have a right to silence, I also know that most teenagers profess loudly and clearly when they are unjustly criticized or accused of something. I find it

particularly strange that Brian, who was arrested and taken in the car, didn't say somebody else did it at that particular time. It was not until we get here. I am convinced beyond a reasonable doubt that Brian was the one the date in question, the identification is sufficient in my judgment, and I am going to enter a finding of guilty.

The sole question here is whether a defendant's constitutional rights are violated when the trier of fact relies upon his post–arrest silence in making a finding of guilt.[1] Counsel for Davis and for the State argue from the premise that Davis was not advised of his *Miranda* rights following his arrest and we proceed from this premise in our analysis. Davis contends that the trial court's reliance upon his post–arrest silence violated his constitutional rights to due process and to remain silent. The State responds that the silence of an arrested defendant who has not been given *Miranda* warnings may be used against him for purposes of impeachment. The State relies on the per curiam opinion of the United States Supreme Court in *Fletcher v. Weir,* 455 U.S. 603, 71 L. Ed. 2d 490, 102 S. Ct. 1309 (1982).

## RIGHT TO DUE PROCESS

Our consideration of this issue starts with *United States v. Hale,* 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133 (1975), a federal prosecution for robbery occurring in the District of Columbia. Hale was arrested shortly after the robbery, advised of his right to remain silent, and searched. The police found $158 in his possession. Hale did not respond to police questions as to where he got the money. At trial, Hale testified to an alibi defense. On cross examination the prosecutor caused Hale to admit that he had not offered this exculpatory information to the police at the time of his arrest. The Court stated:

> Not only is evidence of silence at the time of arrest generally not very probative of a defendant's credibility,

---

[1]It is difficult to tell from this record whether the trial court used Davis' post–arrest silence to impeach his testimony at trial or as substantive evidence of guilt. We hold that a defendant's post–arrest silence may not be used for either purpose. *See State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979).

but it also has a significant potential for prejudice. The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted. And permitting the defendant to explain the reasons for his silence is unlikely to overcome the strong negative inference that the jury is likely to draw from the fact that the defendant remained silent at the time of his arrest.

As we have stated before: "When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out." *Shepard* v. *United States*, 290 U. S. 96, 104 [78 L. Ed. 196, 54 S. Ct. 22] (1933). We now conclude that the respondent's silence during police interrogation lacked significant probative value and that any reference to his silence under such circumstances carried with it an intolerably prejudicial impact.

Accordingly, we hold that under the circumstances of this case it was prejudicial error for the trial court to permit cross–examination of respondent concerning his silence during police interrogation, and we conclude, in the exercise of our supervisory authority over the lower federal courts, that Hale is entitled to a new trial.

(Footnote omitted.) *Hale,* 422 U.S. at 180–81. All Justices concurred in the opinion, but Justices Douglas and White separately expressed their views that the federal due process clause is violated when the prosecution calls attention to the silence of the accused at the time of arrest.

Following *Hale,* the United States Supreme Court decided in *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976) that the use of a criminal defendant's post–arrest silence to impeach an exculpatory story given at trial violates due process when the defendant's silence follows *Miranda* warnings. The Court reasoned that it would be fundamentally unfair to allow impeachment use of post–arrest silence because the *Miranda* warnings implicitly assure the arrestee that silence will carry no penalty. *Doyle,* 426 U.S. at 618. In *State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979), our State Supreme Court followed *Doyle* and extended its holding to prohibit both impeachment and substantive use of post–arrest silence following *Miranda* warnings. *See also State v. Evans,* 96 Wn.2d 1, 633 P.2d 83

(1981).

Then came *Fletcher v. Weir, supra,* a per curiam opinion of the United States Supreme Court decided without oral argument. *Fletcher* holds that, in the absence of *Miranda* warnings, the federal due process clause does not prohibit the use of a defendant's post–arrest silence for impeachment purposes. The Court found that the fundamental unfairness present in *Doyle* was absent in *Fletcher* because no governmental action, *i.e.,* the reading of *Miranda* warnings, induced the defendant's silence. The Court concluded that without "the sort of affirmative assurances embodied in the *Miranda* warnings, . . . it [does not] violate . . . due process of law for a State to permit cross–examination as to postarrest silence when a defendant chooses to take the stand." *Fletcher,* 455 U.S. at 607.

*Fletcher* is controlling on Davis' federal due process claim. Davis also alleges, however, a violation of our state due process clause, Const. art. 1, § 3. It is well established that state courts have the power to interpret their state constitutional provisions as more protective of individual rights than the parallel provisions of the United States Constitution. *State v. Simpson,* 95 Wn.2d 170, 177, 622 P.2d 1199 (1980); *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983). Because the language of our state due process clause is virtually identical with that of the federal due process clause,[2] federal cases are entitled to great weight. They are not, however, controlling. *Young v. Konz,* 91 Wn.2d 532, 539, 588 P.2d 1360 (1979); *Olympic Forest Prods., Inc. v. Chaussee Corp.,* 82 Wn.2d 418, 422, 511 P.2d 1002 (1973).[3]

---

[2]*Compare* Const. art. 1, § 3: "No person shall be deprived of life, liberty, or property, without due process of law" *with* U.S. Const. amend. 14: "[N]or shall any state deprive any person of life, liberty, or property, without due process of law; . . ."

[3]After this opinion was written, our State Supreme Court rendered its decision in *State v. Bartholomew,* 101 Wn.2d 631, 683 P.2d 1079 (1984). In *Bartholomew,* the court reiterated that the United States Supreme Court's interpretation of the Fourteenth Amendment does not control our interpretation of the state

■ We decline to follow *Fletcher* in construing the state due process clause for two reasons. Limiting the exclusion of post–arrest silence to instances where *Miranda* warnings are given would penalize the knowledgeable defendant who has not been advised of his rights. Such a rule also has the potential to discourage the reading of *Miranda* warnings.[4]

Studies suggest that knowledge of the rights embodied in the *Miranda* warnings is extensive. Comment, *Fourteenth Amendment—Due Process: The Impeachment Use of Post–Arrest Silence Which Precedes the Receipt of Miranda Warnings,* 73 J. Crim. L. & Criminology 1572, 1587 (1982). There is no logic in protecting a defendant advised of his rights and not an unadvised defendant. Both defendants are exercising the same constitutional right. The arrest itself is governmental action which enshrouds a defendant with the constitutional right to remain silent. A suspect's fears upon arrest, combined with the widespread knowledge of the right to remain silent, will often result in the defendant remaining silent.

Adopting the position advanced by the State might also encourage police to delay reading *Miranda* warnings or to dispense with them altogether to preserve the opportunity to use the defendant's silence against him. A constitutional guaranty designed to protect society from improper police conduct becomes meaningless when it may be obviated by law enforcement officials improperly withholding the *Miranda* warnings. We decline to adopt such a rule of law.

---

constitution's due process clause. *Bartholomew,* at 639.

[4]The dissent erroneously asserts that it is improper to construe our state constitution as more protective of individual rights than the federal constitution when the pertinent provisions are similarly or identically phrased. Only if constitutional decisions by federal courts are "logically persuasive and well–reasoned, paying due regard to precedent and the policies underlying specific constitutional guarantees, may they properly claim persuasive weight as guideposts when interpreting counterpart state guarantees." Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv. L. Rev. 489, 502 (1977). For citations to state court decisions adopting this approach, *see* Brennan, 90 Harv. L. Rev. at 500 n.76.

We hold that the use of a defendant's post–arrest silence, regardless of whether such silence follows *Miranda* warnings, is fundamentally unfair and violates the due process clause of the Washington Constitution, article 1, section 3.

Accordingly, we need not consider Davis' contentions that use of his post–arrest silence violated the privilege against compelled self–incrimination guaranteed by the fifth amendment to the United States Constitution and article 1, section 9 of the Washington Constitution.

We reverse and remand to the trial court.

SCHOLFIELD, J., concurs.

DURHAM, C.J. (dissenting)—In its attempt to circumvent the clear holding of *Fletcher v. Weir,* 455 U.S. 603, 71 L. Ed. 2d 490, 102 S. Ct. 1309 (1982), the majority uses an expansive interpretation of our state due process clause, Const. art. 1, § 3.

The majority concedes that this case is controlled by *Fletcher* insofar as the federal due process clause is concerned. *Fletcher* held that if *Miranda* warnings are not given, fundamental fairness is not violated when the defendant's post–arrest silence is used to impeach an exculpatory story given for the first time at trial. Thus, *Fletcher* made the admissibility of such impeachment hinge upon receipt of *Miranda* warnings. The Court followed *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976), in which it held that the giving of *Miranda* warnings renders an arrestee's silence "insolubly ambiguous" because he or she may simply be exercising his right to remain silent in response to the assurance that silence will not be penalized. *Doyle,* 426 U.S. at 617.

This rationale has been criticized. *See* Clark, *The Emergence of a "New Federalism" Approach,* 19 Am. Crim. L.J. 761 (1982). A defendant has the right to remain silent following arrest whether or not *Miranda* warnings are given. Arguably, it may be as unfair to permit the impeachment of an unadvised defendant, particularly in view of the

widespread public awareness of the *Miranda* rights. *See* Comment, *Fourteenth Amendment—Due Process: The Impeachment Use of Post–Arrest Silence Which Precedes the Receipt of Miranda Warnings,* 73 J. Crim. L. & Criminology 1572, 1587 (1982). Nonetheless, the Supreme Court effectively rejected this view in *Fletcher,* and we are bound by that decision as a matter of federal due process.

In order to circumvent *Fletcher,* the majority interprets the due process clause of our state constitution, Const. art. 1, § 3, to mandate a different result. Unfortunately, it offers no substantive reason for doing so. Admittedly, we have the power, as a matter of federalism, to interpret our constitution as more protective of individual rights than the federal constitution. *See Oregon v. Hass,* 420 U.S. 714, 719, 43 L. Ed. 2d 570, 95 S. Ct. 1215 (1975); *State v. Simpson,* 95 Wn.2d 170, 177, 622 P.2d 1199 (1980). As stated in *Simpson,* at 177:

> Such independent interpretation of state constitutional provisions is particularly appropriate when the language of the state provision differs from the federal, and the legislative history of the state constitution reveals that this difference was intended by the framers. *See, e.g., People v. Anderson,* 6 Cal. 3d 628, 493 P.2d 880, 100 Cal. Rptr. 152 (1972); *State v. Brackman,* 178 Mont. 105, 582 P.2d 1216 (1978); *see generally* Note, *The New Federalism: Toward a Principled Interpretation of the State Constitution,* 29 Stan. L. Rev. 297 (1977).

However, in affirming our authority to more liberally interpret the Washington Constitution, the majority states the obvious. Any particular reading of our constitution should be based upon an actual analysis of its language and historical origin, not upon a visceral reaction to ideological trends in the United States Supreme Court. The majority completely fails to identify any aspects of the language or historical purpose of article 1, section 3 that would warrant a departure from *Fletcher.*[5]

---

[5]The majority claims that I assert "that it is improper to construe our state constitution as more protective of individual rights than the federal constitution

The authority that does exist with respect to the proper interpretation of our due process clause is, at best, inconclusive. As the majority concedes, the language of that clause is virtually identical to the federal due process clause. The only difference is that Const. art. 1, § 3 apparently does not have a state action requirement. Neither Davis nor the majority suggests that this difference is relevant here. Moreover, the rules of construction which have been applied to the interpretation of our constitution are somewhat conflicting in the due process context. The general rule has been that the decisions of the United States Supreme Court will be followed when the language of the relevant constitutional provisions is similar. *See, e.g., Dutil v. State,* 93 Wn.2d 84, 86, 606 P.2d 269 (1980); *Housing Auth. v. Saylors,* 87 Wn.2d 732, 739, 557 P.2d 321 (1976). In construing article 1, section 3, however, the courts have held that federal decisions interpreting the Fourteenth Amendment are entitled to great weight but are not controlling. *See, e.g., In re Young,* 95 Wn.2d 216, 229, 622 P.2d 373 (1980); *Young v. Konz,* 91 Wn.2d 532, 538–39, 588 P.2d 1360 (1979).

If anything, our Supreme Court has embraced the rationale of *Fletcher.* Both *State v. Evans,* 96 Wn.2d 1, 633 P.2d 83 (1981) and *State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979), relied upon by the majority, were based squarely upon the reasoning in *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). Neither decision even mentioned the Washington Constitution. *Doyle,* of course, held that the use of post–arrest silence to impeach an exculpatory story offered at trial denies fundamental fairness *only when Miranda warnings are given. Fletcher* is nothing more than an application of *Doyle.* Indeed, the

---

when the pertinent provisions are similarly or identically phrased." Majority opinion, at 605 n.4. To the contrary, my position here is simply that the majority offers no sound historical reasons for departing from otherwise controlling authority. After years of acknowledging the great weight and deference due federal decisions, the majority dismisses *Fletcher v. Weir,* 455 U.S. 603, 71 L. Ed. 2d 490, 102 S. Ct. 1309 (1982) summarily.

*Evans* court expressly recognized that the linchpin of *Doyle* was the giving of *Miranda* warnings. *See Evans,* 96 Wn.2d at 3.

The majority's reliance on *Fricks* and *Evans* to support its departure from *Fletcher* is, therefore, surprising, to say the least.

Accordingly, I dissent.