The STATE of Utah, Plaintiff
and Appellee,

v.

Kenneth James MORRELL,
Defendant and Appellant.

No. 890031–CA.

Court of Appeals of Utah.

Nov. 30, 1990.

Rehearing Denied Jan. 15, 1991.

Debra K. Loy, Elizabeth Holbrook, Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., Christine F. Soltis, Asst. Atty. Gen., for plaintiff and appellee.

Before BENCH, BILLINGS, and ORME, JJ.

## OPINION

ORME, Judge:

Defendant Morrell appeals his conviction for robbery, a second degree felony in violation of Utah Code Ann. § 76-6-301 (1990). We affirm.

## FACTS

Except as otherwise noted, we set forth the facts in the manner most consistent with the jury's verdict. On September 4, 1988, Matthew Moor, a pizza delivery driver employed by Ambassador Pizza in Salt Lake City, was robbed while attempting to deliver a pizza ordered by telephone. As Moor drove to the neighborhood of 813 Genessee Street, the address to which he was to deliver the pizza, Moor saw defendant Kenneth Morrell standing on a corner and asked him for directions. Moor then drove a very short distance to 813 Genessee Street and discovered that the house was dark and apparently unoccupied. As Moor returned to his car, defendant approached him and asked to purchase the pizza. Moor offered to sell defendant the pizza for five dollars. Defendant pressed an object to Moor's neck and told Moor that he was being robbed.

Defendant got into the car with Moor and demanded money from him. When Moor did not produce the amount of money that defendant wanted, defendant had Moor drive to another location in order to search the car for more money. He found none. Defendant then ordered Moor to drive to a house in the avenues area in order to set up a robbery of a Domino's Pizza delivery driver. Upon telephoning, defendant found Domino's Pizza closed and told Moor that he had better produce more money. Moor suggested that they drive to his friend's house to get money, and defendant agreed.

Moor drove to the home of Ivan Ilov and sat in the driveway honking the horn. When Ilov approached the car he discerned that Moor was in some sort of trouble. Moor asked Ilov for money, stating that defendant was holding a knife to him. Ilov broke through the window and attempted to restrain defendant. Defendant escaped and Moor and Ilov gave chase. As Moor reached him, defendant hit Moor, breaking Moor's nose. Moor caught defendant again and Ilov assisted in restraining him. A passing taxi driver summoned police.

When the police arrived, one officer took custody of defendant from Ilov and asked defendant: "What's going on?" Defendant did not respond. Defendant was arrested after Moor was interviewed by another officer and the officers concluded that a robbery had occurred.

At trial, defendant testified he saw Moor driving in defendant's neighborhood and recognized both Moor and his car. He stated that he had sold some marijuana to Moor at a party for which Moor still owed money to defendant. Defendant claimed that when Moor pulled over to ask street directions of defendant he asked Moor about the debt. Defendant testified that Moor did not respond, but pushed the pizza out the window at defendant. Defendant then got in the car and again asked Moor about the money owed for the marijuana. Moor did not have enough money to satisfy the debt and suggested that they go elsewhere to get more money. Eventually, defendant and Moor arrived at Ilov's home,

where the defendant's account of the events largely corresponds with Moor's.

The trial court precluded defense counsel from cross-examining Moor concerning his drug and alcohol use, and any related possible effect on his ability to recall prior encounters with defendant which may have supported defendant's claim of a drug sales debt. The court also allowed testimony by a police detective that the telephone used to place the pizza order incident to the robbery in this case, like others which had occurred, was not located at the address stated by the person placing the order.

The jury convicted defendant of robbery. On appeal, defendant raises several evidentiary issues. First, defendant attacks the trial court's admission of evidence of his guilty plea to a prior robbery and of the facts underlying that plea. Second, defendant challenges the admission of evidence of his silence in response to the initial question put to him by police. Third, defendant claims that the trial court improperly limited cross-examination of the robbery victim [1] and in admitting hearsay testimony by a police officer.

## EVIDENCE OF THE PRIOR ROBBERY

 Defendant challenges, under rule 609(a)(2) of the Utah Rules of Evidence, the admission of his guilty plea to a similar robbery of a pizza deliveryman. Defendant claims that a guilty plea is not equivalent to a conviction and that robbery is not a crime of dishonesty automatically admissible under Rule 609(a)(2). We review the trial court's evidentiary rulings only for an abuse of discretion which results in prejudice to substantial rights. *State v. Brown*, 771 P.2d 1093, 1094 (Utah Ct.App.1989); *State v. Jamison*, 767 P.2d 134, 137 (Utah Ct.App.1989). The state concedes that admission of the guilty plea to theft, on the ground that theft may automatically be treated as a crime of dishonesty, was improper.[2] We agree.

Rule 609(a)(2) provides that evidence of conviction for any crime involving dishonesty or a false statement is admissible to attack the credibility of a witness. The focus of the rule concerns impeachment based on the probability that a particular witness may not be telling the truth as evidenced by prior acts of dishonesty on the part of that witness. Any act done with knowledge of its unlawfulness involves a measure of dishonesty as commonly defined. Nonetheless, Rule 609(a)(2) was drafted to restrict automatic admissibility to those crimes which are committed by means of deceit or fraud and thus bear directly on a witness's tendency to offer untruthful testimony. *See State v. Morehouse*, 748 P.2d 217, 222 (Utah Ct.App. 1988) (Jackson, J., dissenting) (citing legislative history of subsection 609(a)(2)).

While some dispute exists as to whether robbery should be classified as a crime of dishonesty, *see State v. Wight*, 765 P.2d 12,

---

1. Defendant also raises a challenge under the Confrontation Clause, U.S. Const. amend. VI, asserting that he was denied the constitutional right of confrontation when the trial court limited cross-examination of Matthew Moor. However, defendant failed to make this specific objection, as required by Utah Rule of Evidence 103(a)(1), and therefore has waived his claim insofar as premised on confrontation grounds. *See State v. Eldredge*, 773 P.2d 29, 34 (Utah) (failure to object precludes review of evidentiary matters except in case of plain error), *cert. denied*, ── U.S. ──, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989).

2. The state argues, however, that the guilty plea should be treated as a conviction for purposes of Rule 609(a)(2), relying on *State v. Delashmutt*, 676 P.2d 383, 384 (Utah 1983) (per curiam). In our view, *Delashmutt* has questionable value as precedent. Significant case law concerning the nature of guilty pleas has developed since *Delashmutt* which gives doubt to its continued vitality. *See, e.g., State v. Gallegos*, 738 P.2d 1040 (Utah 1987); *State v. Kay*, 717 P.2d 1294, 1303–5 (Utah 1986). Defendant had merely entered his plea on the other charge, and had neither been adjudged guilty nor sentenced by the court. In view of the liberality with which motions to withdraw guilty pleas are to be granted prior to sentence, *see, e.g., Gallegos*, 738 P.2d at 1042 ("presentence motion to withdraw a guilty plea should, in general, be liberally granted"), we see real difficulty, for Rule 609(a)(2) purposes, in equating a mere guilty plea, prior to sentencing, with an actual conviction. As explained hereafter, however, we need not definitively decide this issue since any error in admission of the guilty plea under Rule 609 was harmless in view of the admissibility of other evidence of the crime under Rule 404(b).

21–22 (Utah Ct.App.1988) (Garff, J., concurring), it is established under Utah law that the crime of robbery does not automatically qualify for admission under Rule 609(a)(2). *State v. Bruce,* 779 P.2d 646, 656 (Utah 1989) (robbery conviction not automatically admissible); *State v. Brown,* 771 P.2d 1093, 1094–95 (Utah Ct.App.1989) (conviction of theft crimes not automatically admissible); *State v. Wight,* 765 P.2d at 17–19 (aggravated robbery conviction not automatically admissible).

The trial court made no inquiry into the facts underlying defendant's guilty plea in its consideration of admissibility. Therefore, nothing in the record demonstrates a consideration of facts relative to defendant's prior theft to determine their relevance, if any, to defendant's propensity to tell the truth.[3] *See Wight,* 765 P.2d at 18 (under 609(a)(2), crime of robbery may be admissible if underlying facts demonstrate impairment of credibility).

■ Although conceding the guilty plea could not properly come in under Rule 609, the state claims we should nonetheless affirm because evidence of the facts underlying the prior robbery charge, offered through the testimony of the victim in that case, was admissible under Rule 404(b) as probative of defendant's intent to rob Moor, and in refutation of defendant's claim that he was merely attempting collection of a debt. Rule 404(b) establishes certain circumstances in which evidence of other crimes may be admitted:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Utah R.Evid. 404(b).

Defendant directly challenged the element of intent. He claimed he was only trying to collect a debt through somewhat insistent, but not unlawful, means. Defendant was being tried for aggravated robbery, which is "the unlawful and intentional taking of personal property" from another, "against his will," by threat or use of "a dangerous weapon." Utah Code Ann. §§ 76–6–301(1), –302(1)(a) (1990). The only two controverted elements of the charge were the use of a weapon[4] and defendant's intent. Therefore, it was critical for the state that it discredit defendant's claim of a coincidental encounter with Moor. Admission of prior bad acts is proper when it tends to prove a contested material element of the crime charged. *State v. Featherson,* 781 P.2d 424, 426 (Utah 1989); *State v. Shaffer,* 725 P.2d 1301, 1307 (Utah 1986). Evidence of the prior robbery was highly probative of defendant's intent in the present case.

■ Even though the evidence was otherwise admissible under Rule 404(b), we must nevertheless determine whether the prejudicial nature of the evidence substantially overshadowed its probative value under Utah Rule of Evidence 403. *See State v. Gotschall,* 782 P.2d 459, 462 (Utah 1989). This is a fact-intensive question, delegated by the Rules of Evidence to the discretion

---

**3.** Convictions not admissible under Rule 609(a)(2) may yet be admissible under subsection (a)(1), which provides for admission of prior convictions where the court determines that the probative value outweighs the prejudicial effect. The court must inquire into the probative value of the facts supporting the conviction and balance them against potential prejudice. *State v. Banner,* 717 P.2d 1325, 1334 (Utah 1986). In *Banner,* the Supreme Court listed five factors to be considered. *Id.* The trial court in this case did not consider the *Banner* factors and we therefore do not decide whether the guilty plea could have been admitted under Rule 609(a)(1). Nor did the state argue that defendant's particular brand of rob-

bery—characterized by false statements concerning his telephone number, his whereabouts, and his desire to obtain and pay for pizza—had sufficient bearing on his propensity to tell the truth to distinguish his crime from garden-variety theft so as to permit the evidence to come in under either Rule 609(a)(2) or 609(a)(1).

**4.** Defendant was convicted of simple robbery under Utah Code Ann. § 76–6–301 (1990), manifesting that the jury did not find he used or threatened the use of a dangerous weapon. The jury apparently concluded that the object defendant pressed against Moor was only a plastic nametag.

of the trial court. We therefore review determinations of admissibility under Rule 403 only for abuse of discretion. *Id.* Only if discretion is abused *and* prejudice results will the court's mistake constitute reversible error. *Id.*

In *State v. Shickles*, 760 P.2d 291 (Utah 1988), the Utah Supreme Court listed several factors which are helpful in balancing probativeness and prejudice.

> In deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*Id.* at 295–96 (quoting E. Cleary, *McCormick on Evidence*, § 190 at 565 (3d ed. 1984)). The record reflects that counsel for defendant and the state presented arguments based on these factors. The trial court then ruled that the evidence was admissible.

Testimony concerning the prior robbery was the only evidence, other than defendant's and Moor's conflicting testimony, bearing on whether defendant's intent was to rob Moor or merely to secure payment of money defendant believed he was owed. The testimony, then, was clearly prejudicial to defendant. It was, however, extremely probative of defendant's intent during the incident with Moor. The two robberies for which defendant was charged occurred within months of each other. Each manifested an almost identical factual pattern. There was strong evidence of defendant's guilt in the prior robbery in view of competent eyewitness testimony from the victim in that case. The state had a great need to present this evidence to demonstrate intent; no effective alternative proof was available. *Cf. Shickles*, 760 P.2d at 296 (even where "other evidences of defendant's intent" are introduced, "the use of ... other-crimes evidence" is "not neces-

sarily" precluded). We cannot say that the trial court abused its discretion in weighing these factors and determining that the probative value substantially outweighed the prejudicial effect. It was therefore not incumbent upon the court to exclude the evidence under Rule 403. Because admission of the evidence was proper under Rule 404(b), and not barred by Rule 403, any error in admission of the guilty plea under Rule 609(a)(2) is harmless.

## EVIDENCE OF
## PRE-*MIRANDA* SILENCE

During the cross-examination of one officer, the prosecution elicited testimony of defendant's silence when he was asked by another police officer what was happening. This question was asked immediately after the arrival of the officers, who took control of defendant from Ilov. No *Miranda* warning had been given, and defendant claims for this reason that the court erred in allowing improper comment on his silence. The state asserts that the testimony was proper as demonstrating intent to rob Moor since defendant did not exculpate himself by stating that he was merely endeavoring to collect a debt.

In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the Supreme Court held that the prosecution is barred from using statements stemming from *custodial interrogation* of a defendant unless the defendant had been informed of the right to remain silent, the right to counsel, the right to appointed counsel if indigent, and that any statement may be used against the defendant. Not all police inquiry is made in the context of custodial interrogation. On the contrary,

> [t]he Utah Supreme Court has identified several key factors to consider in order to determine when a defendant
>> who has not been formally arrested is in custody. They are: (1) the site of interrogation; (2) whether the investigation focused on the accused; (3) whether the objective indicia of arrest were present; and (4) the length and form of interrogation.

*Salt Lake City v. Carner,* 664 P.2d 1168, 1171 (Utah 1983). Another factor which we find pertinent to our analysis was recognized by our Oregon counterpart in *State v. Herrera,* 49 Or.App. 1075, 621 P.2d 1209 (1980). That factor is (5) whether the defendant came to the place of interrogation freely and willingly. *Id.* [621 P.2d] at 1212.

*State v. Sampson,* 143 Utah Adv.Rep. 12, 15 (Ct.App.1990).

Treating these factors in order, the following conclusions emerge. First, the site of interrogation was a public parking lot which, unlike interrogation at the police station, *see id.,* does not suggest custody. Second, the investigation had not yet focused on defendant. When the officers arrived at the scene and observed defendant restrained by Ilov, they knew nothing more than that an altercation had been reported, and that a pizza driver was possibly missing in the same general vicinity. The officers had no reason to know or suspect that the two reports were connected. Nor did they know the reason for the altercation and which party to the altercation, if any, was the culprit. At the time of the question the officers did not know if a crime had been committed, nor had any investigation yet focused on defendant. Contemporaneously with the question, but some distance from where it was asked, Moor exited a nearby restaurant, where he had gone to attend to his broken nose, and spoke with another officer who determined that Moor was the victim of a robbery and defendant was the apparent perpetrator. Nothing more was asked of defendant from that time. To that point, defendant's encounter with the police constituted nothing more than a general investigation to determine whether a crime had even been committed. Third, while it is apparent that defendant had been momentarily restrained by police officers when the question was put to him, other objective indicia of arrest were lacking. Defendant was not handcuffed, placed in a police vehicle, or told he was under arrest. Fourth, the length of interrogation was exceptionally brief and the form of interrogation, on which "Utah courts have placed a great deal of emphasis," *id.,* was merely investigatory and in no sense accusatory. *See id.* The question asked of defendant was merely part of a preliminary attempt to ascertain exactly that which was asked—"What's going on?" Fifth, while defendant had not come to the place of questioning voluntarily, he had also not been taken there by police against his will—he was chased there by citizens trying to apprehend him.

While the fifth factor might be taken as "relatively 'neutral,' " *id.,* each of the other factors are not suggestive of custody. Taken together, the factors compel the conclusion that defendant was not subject to custodial interrogation and no *Miranda* warning was required.[5] *See also State v. Kelly,* 718 P.2d 385, 391 (Utah 1986) (brief questioning inside defendant's home not interrogation); *Salt Lake City v. Carner,* 664 P.2d 1168, 1170 (Utah 1983) (police not required to give warning upon asking investigatory question).

## HEARSAY & LIMITATION OF CROSS–EXAMINATION

■ Defendant claims that the court's limitation of cross-examination of Moor and the admission of certain hearsay testimony was erroneous.[6] We review evidentiary rulings for a clear abuse of discretion.

**5.** In view of our disposition, we need not consider the state's alternative argument that, in any event, defendant's silence was admissible to impeach a defense offered for the first time at trial. *See Fletcher v. Weir,* 455 U.S. 603, 605–607, 102 S.Ct. 1309, 1311–12, 71 L.Ed.2d 490 (1982). *But see People v. Jacobs,* 158 Cal.App.3d 740, 750, 204 Cal.Rptr. 849, 856 (1984) (rejecting *Fletcher v. Weir* analysis under state constitutional provision nearly identical to federal counterpart); *State v. Davis,* 38 Wash.App. 600, 686 P.2d 1143, 1145–46 (1984) (rejecting *Fletcher v.* *Weir* analysis under state constitutional provision identical to federal counterpart); *Nelson v. State,* 691 P.2d 1056, 1059–60 (Alaska Ct.App. 1984) (rejecting *Fletcher v. Weir* analysis under state constitutional provision nearly identical to federal counterpart).

**6.** We do not consider his related claim that even if the court's decisions in these respects can be sustained under the Utah Rules of Evidence, his right to confrontation was nonetheless denied. *See* note 1, *supra.*

*State v. Brown,* 771 P.2d 1093, 1094 (Utah Ct.App.1989).

On direct examination, Moor testified he had never seen defendant at a party. On cross-examination Moor conceded that he had attended parties of which he thereafter did not have complete recollection. Defense counsel asked if Moor's memory deficiency might be related to drug or alcohol use and whether it was possible that Moor had met defendant at such a party and did not recall the encounter because of the influence of alcohol or drugs. The court sustained the prosecution's objections to both questions.

■■ Defendant had the right to impeach Moor's credibility by attacking his memory. Utah R.Evid. 607. Even though this right is limited by the witness's right to be free from harassment and humiliation, *State v. Chesnut,* 621 P.2d 1228, 1233 (Utah 1980), defendant must be allowed to elicit testimony concerning a witness's ability to recall the event about which the witness is testifying. Moor's possible alcohol and drug use and any impact on his memory were relevant to the credibility of his testimony refuting defendant's claimed defense of debt collection growing out of prior dealings with Moor. Consequently, it was error for the court to prevent testimony which probed Moor's possible inability to remember the party at which defendant claimed to have met him and to have sold him drugs for which Moor was to pay defendant later.

Defendant also challenges a detective's testimony concerning the telephone locations from which pizza orders were made and the telephone numbers left with the order taker. The detective testified that in both the robbery at issue and the prior robbery, the number left did not correspond to the pay telephone from which the call had been made, although in both instances the numbers were merely rearranged. Defendant claims this testimony was improper hearsay.

■■ The state claims the business records and public records exceptions of Utah Rule of Evidence 803 allow admission of the officer's testimony. *See* Utah

R.Evid. 803(6), (8). However, the police report, and not the business record of the pizza company, was the source to which the officer referred in his testimony. Police reports are not eligible for admission under either of these provisions of Rule 803 except in certain limited circumstances not applicable here. Utah R.Evid. 803(8)(B). *See State v. Bertul,* 664 P.2d 1181, 1184–86 (Utah 1983).

We need not determine, however, whether the court's errors in limiting cross-examination of Moor and permitting the detective's hearsay testimony rise to the level of a clear abuse of discretion. Any error in either instance was harmless and would not entitle defendant to reversal. *See State v. Tillman,* 750 P.2d 546, 555 (Utah 1987).

■■ Concerning the limitations on cross-examination, defendant was allowed to present his defense of debt collection stemming from an alleged marijuana sale to Moor. The jury learned that defendant claimed Moor used illegal drugs and had heard Moor admit that he had been to parties of which he later had no memory. While defendant should have been allowed to pursue questioning of Moor's memory ability, defendant established the important point that Moor's memory of parties was imperfect, a matter the jury was free to consider in deciding Moor's credibility. The exact reason for this deficiency was much less important.

■■ Concerning the telephone testimony, the facts of defendant's prior robbery were properly introduced through the testimony of the victim in that incident. Defendant also admitted his participation in that robbery. The precise methodology of telephone usage in both instances was therefore comparatively inconsequential to the outcome.

Viewing the other substantial evidence supporting defendant's conviction, we cannot say that defendant might not have been convicted without the officer's testimony concerning the telephone numbers or if the jury had learned more about the exact reason Moor had incomplete recall of some parties he had attended.

## CONCLUSION

While the trial court erred in admitting evidence of the prior robbery under Rule 609, the same evidence was properly admitted under Rule 404(b). Defendant was not subjected to custodial interrogation, and therefore was not entitled to a *Miranda* warning. Finally, any error in admission of the officer's hearsay testimony concerning the phone numbers and the limitation on cross-examination concerning Moor's prior drug or alcohol use was harmless. Defendant's conviction is accordingly affirmed.

BENCH and BILLINGS, JJ., concur.