[No. 38385-0-I.    Division One.    December 18, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY JAMES LINDEN, *Appellant*.

*Christopher Gibson* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *Seth Aaron Fine, Deputy*, for respondent.

WEBSTER, J. — Jeffrey James Linden was convicted of cocaine possession after police searched his van incident to arrest. At trial, Linden took the stand. In the middle of cross-examination, the prosecutor asked for a side-bar and revealed he received a police report one day earlier that

confirmed Linden was arrested in King County for cocaine possession. Linden moved to suppress this report or for mistrial, arguing the State violated discovery rule CrR 4.7 and compelling him to respond to this impeachment evidence could violate his Fifth Amendment rights in the King County matter. But the court granted a recess until the next morning, when Linden testified on redirect that he could not respond to this police report. The jury convicted.

He appeals this conviction, alleging the trial court abused its discretion in refusing to grant a mistrial. He contends the prosecutor willfully violated CrR 4.7, resulting in an involuntary, unknowing, and unintelligent waiver of his Fifth Amendment and Washington Constitution article I, section 9 right to silence. The State cross-appeals, arguing: (1) CrR 4.7 does not apply to rebuttal evidence or evidence that might be used to impeach; (2) the trial court did not abuse its discretion in refusing to grant a mistrial; and (3) nondisclosure did not invalidate Linden's Fifth Amendment waiver.

We hold the trial court properly exercised its discretion when it found that the State violated CrR 4.7 and that recess, rather than mistrial, was the appropriate remedy. Although the State's disclosure may have shaped Linden's trial strategy and decision to testify, the State's CrR 4.7 violation did not invalidate Linden's Fifth Amendment waiver. We do not equate a "knowing and intelligent" waiver with a right to be apprised of all the advantages and disadvantages of such a waiver. Thus, we affirm Linden's judgment and sentence.

## FACTS

Late the evening of May 7, 1994, while on patrol in an unmarked car, Edmonds police stopped a blue van for expired license tabs. As a result of this stop, the driver, Jeffrey James Linden, was arrested for driving while his license was suspended, and two passengers, Brenda Lee LaPlant and Larry Hardbeck were arrested on outstanding warrants. In a search incident to arrest, the officers found

a backpack belonging to Hardbeck that contained drug paraphernalia. And in the van, they found: (1) a marijuana pipe with white residue in a map pouch in the engine compartment console, located between the two front seats; (2) a crack cocaine pipe with a baggie and bindle containing a white powdery substance, under the driver's seat; (3) an embroidered pillow and some photographs, also under the driver's seat, which Linden claimed he owned. A toolbox sat behind the driver's seat, obstructing access between the rear portion of the van and the driver's seat. Consequently, the officers then arrested and cuffed Linden for cocaine possession.

The Snohomish County Prosecutor charged Linden with violating the Uniform Controlled Substances Act, RCW 69.50.401(d), for cocaine possession. At trial, Linden testified on his own behalf. To support his "unwitting possession" defense, he claimed he did not know Hardbeck was involved in drugs or that he had them with him that night. He also said he was having an extramarital affair with LaPlant, which began when Linden agreed to help her end her prostitution and cocaine use. Linden admitted owning the marijuana pipe, but denied knowing the cocaine or other drug paraphernalia was in the van.

The State cross-examined Linden about a woman named Sandra Kruegg, who Linden claimed was another woman he was helping. The State then proceeded to question Linden about his statements that he did not use cocaine or associate with "losers" who did, after which the State requested a side-bar. At side-bar, the State revealed that on February 26, 1996, one day before Linden took the stand, it received a police report indicating that on February 10 Seattle police found a vial of cocaine on Linden's person in a search incident to arrest, which also involved Ms. Kruegg.

The defense objected to using this report to impeach Linden, arguing the State violated the discovery rules by failing to disclose this report earlier, especially in light of a pretrial Agreed Omnibus Order. Specifically, Linden requested that the report be suppressed, or alternatively,

that the court declare a mistrial. Defense counsel informed the court that Linden's decision to testify "may very well have changed" if he knew about this report when the State received it. But he also conceded that "[i]t would be difficult in a case like this not to put Mr. Linden on the stand, but I certainly would have asked him about this in direct examination, rather than waiting until it's opened up in cross." The State argued that it first learned of this arrest from defense counsel, and whereas it would need to follow up with police to obtain a report, defense counsel need merely confer with Mr. Linden to learn about the incident.

In response, the court made the following ruling: (1) because there was a reasonable possibility the State would use the police report to impeach Linden, the State had a duty to disclose the report as soon as it confirmed its existence; (2) because the State did not disclose the report as soon as it could have, it violated CrR 4.7, albeit unintentionally; and (3) declaring mistrial was unnecessary according to *State v. Falk*.[1] Instead, the court granted a recess until the next morning, permitting the defense to either reopen its direct examination or respond to the prosecution on redirect.

Linden renewed his CrR 4.7 objection the next morning, also asserting that compelling him to respond to the State's questions would violate his Fifth Amendment right to remain silent as to the investigation pending in King County. Linden then responded to this new evidence on redirect, testifying that he could not explain the February 10 arrest. He then rested his case. The jury returned a guilty verdict, and Linden was later sentenced within the standard range.

## DISCUSSION

Standard of Review

The trial court has wide discretion in ruling on

---

[1] 17 Wn. App. 905, 567 P.2d 235 (1977).

discovery violations and motions for a new trial.[2] These decisions will not be disturbed on appeal unless the court abused its discretion.[3] Even if the court commits an error, the appellant must demonstrate this error was prejudicial.[4] Thus, error is not reversible unless it materially affects the trial's outcome.[5]

## CrR 4.7 Discovery Obligations

Superior Court Criminal Rule 4.7 defines the discovery obligations of both the prosecution and defense. It requires the prosecuting attorney to disclose to the defendant a broad range of evidence and information "within the prosecuting attorney's possession or control."[6] Of particular relevance, the rule encompasses "papers, documents, . . . or tangible objects, which the prosecuting attorney intends to use in the hearing or trial . . .; and . . . any record or prior criminal convictions known to the prosecuting attorney of the defendant . . . ."[7] The disclosure duty is a continuing obligation, and any new material or information must be promptly disclosed.[8] To enforce these rules, the trial court is given broad discretion.[9] Sanctions are provided under CrR 4.7(h)(7)(i):

> [I]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule[,] . . . the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances.

[2]*See State v. Dunivin*, 65 Wn. App. 728, 731, 829 P.2d 799 (1992).

[3]*See id.* (citing *State v. Williams*, 96 Wn.2d 215, 221, 634 P.2d 868 (1981)).

[4]*See State v. Robtoy*, 98 Wn.2d 30, 44, 653 P.2d 284 (1982).

[5]*See State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980).

[6]CrR 4.7(a).

[7]CrR 4.7(a)(1)(v), (vi).

[8]*See* CrR 4.7(h)(2).

[9]*See State v. Dunivin*, 65 Wn. App. 728, 731, 829 P.2d 799 (1992) (citing *State v. Williams*, 96 Wn.2d 215, 221, 634 P.2d 868 (1981)).

In *State v. Falk*,[10] we affirmed a trial court's decision to grant a continuance rather than a mistrial where a prosecutor violated CrR 4.7. There, the prosecutor offered the defendant's confession through police testimony on rebuttal without first disclosing this statement to the defendant pretrial. The prosecutor learned of the defendant's admission during the first day of trial and confirmed it with the testifying police officer the next day, when it was offered.[11] We held the State violated CrR 4.7 by not disclosing the statement as soon as it confirmed its existence.[12] But we affirmed the conviction because this error was not prejudicial, noting:

> The drastic measure of mistrial is only one of many sanctions at the trial court's disposal. Here defendant was granted time in which to marshal his defenses against the damaging testimony. The evidence consisted of a matter peculiarly within his personal knowledge, his own alleged statement . . . . The trial court acted well within its discretion when it denied the motion for mistrial and instead granted a delay so that defendant could decide upon a course of action.[13]

And in *State v. Dunivin*,[14] we again affirmed a trial court's discretion under CrR 4.7(h)(7)(i). *Dunivin* involved a police informant who was also a defense witness. The prosecution impeached the witness by questioning him about his contact with the police and showing him a receipt for the fee he received for supplying information. This was the first time the defendant learned of his witness's informant role. The court granted a mistrial, finding the violation materially affected the trial's fairness.[15] In appealing this ruling, the State argued that because it did not

---

[10]17 Wn. App. 905, 567 P.2d 235 (1977).

[11]*Id.* at 908.

[12]*Id.; see also State v. Brush*, 32 Wn. App. 445, 455, 648 P.2d 897 (1982).

[13]17 Wn. App. at 908 (citations omitted).

[14]65 Wn. App. 728, 829 P.2d 799 (1992).

[15]*Id.* at 731.

intend to cross-examine the witness about his informant role, but was merely prepared to do so if needed, CrR 4.7's "intends to use" language was inapplicable. But we rejected this interpretation, reasoning instead that:

> If the State's argument is accepted, the prosecutor's subjective intent will control its duty to disclose, and, further, no such duty will exist unless the State is reasonably certain that it will introduce the evidence. Under this scenario, if the State were to introduce evidence, undisclosed because of lack of certainty as to its use, the defendant would lack recourse, regardless of prejudice. Such an interpretation of the discovery rules is inconsistent with both the language of the rules and the policy supporting them.[16]

We then held that "intends to use" under the rule contemplates "any situation where the State is aware of the document and there is a reasonable possibility that the document will be used during any phase of the trial."[17] Although the State expected it could avoid using the impeaching questioning and evidence, the mere "reasonable possibility" that the witness's testimony might take this path mandated CrR 4.7 disclosure. Moreover, we found no different result where the evidence is intended only for rebuttal or impeachment evidence.[18]

Despite this clear case law, the State argues that the commentary to the ABA Standards relating to discovery and procedure before trial supports its position that the phrase "intends to use at trial" applies only to the prosecutor's case-in-chief and that this case law holding otherwise is misguided. The State also complains that CrR 4.7 does not apply to "information" in otherwise inadmissible documents, and that under *Dunivin*'s "reasonable possibility" standard, it was not required to disclose the arrest report.

---

[16]*Id.* at 732-33.

[17]*Id.* at 733.

[18]*Id.* at 734 (citing *State v. Falk*, 17 Wn. App. at 908); *accord State v. Harris*, 14 Wn. App. 414, 420, 542 P.2d 122 (1975).

To support its first proposition, the State cites the 1970 commentary and standards, which have twice since been substantially revised. The first edition of the ABA's criminal justice standards include CrR 4.7's counterpart, Standard 11-2.1. The language in the two provisions was nearly identical in 1970, and looking to the rule's historical underpinnings, the *Dunivin* court defined the rule's purpose:

> It is the long settled policy in this state to construe the rules of criminal discovery liberally in order to serve the purposes underlying CrR 4.7, which are "to provide adequate information for informed pleas, expedite trial, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process . . .". *State v. Yates*, 111 Wn.2d 793, 797, 765 P.2d 291 (1988) (quoting Criminal Rules Task Force, *Washington Proposed Rules of Criminal Procedure* 77 (West Pub'g Co. ed. 1971)). To accomplish these goals, it is necessary that the prosecutor resolve doubts regarding disclosure in favor of sharing the evidence with the defense.[19]

Yet the State insists the drafters necessarily intended that CrR 4.7 apply only to the prosecution's case-in-chief. But just last year the ABA further liberalized Standard 11-2.1 in furtherance of these recognized policy considerations. In particular, the commentary accompanying Standard 11-2.1(a)(vi) requires not only convictions but also pending charges that might be used for impeachment be disclosed.[20] The commentary emphasizes the importance of such disclosure because it "enables defense counsel effectively to advise the defendant whether . . . to testify at any trial." Although the State argues that it is likely a typographical error that Washington's CrR 4.7(a)(vi) applies to "[a]ny record *or* prior criminal convictions" rather than "[a]ny record *of* criminal convictions," given these recent changes in the ABA rules that further liberalize original Standard

---

[19]65 Wn. App. at 733.

[20]*See* AMERICAN BAR ASSOCIATION, ABA STANDARDS FOR CRIMINAL JUSTICE DISCOVERY AND TRIAL BY JURY, *Disclosure of Pending Charges and Convictions* 11-2.1(a)(vi) commentary at 28 (3d ed. 1996).

11-2.1's disclosure requirements, the State's theory is inconclusive.

Next, the State complains that the rules do not apply to "information" contained in a report. But given CrR 4.7's policy goals, this distinction misses the mark. In particular, it is the information contained in a document that is significant for pretrial preparation. Also, it is insignificant whether or not the police report may have been admissible at trial. Adhering to this distinction could prevent the State from disclosing polygraph results, for example, merely because they may be inadmissible, despite their obvious importance for pretrial preparation. This approach equally undermines the rule's purpose.

Finally, we reject the State's argument that under *Dunivin* there was no "reasonable possibility" it would use the police report at trial because it couldn't predict that Linden would make such "sweeping" statements when testifying. But as the lower court noted, this situation is akin to *Dunivin* to the extent that Linden's testimony took a different course than anticipated.[21] Yet in *Dunivin* we still found these circumstances satisfied the "reasonable possibility" test and disclosure was required. Thus, we find that CrR 4.7 discovery requirements apply to rebuttal and impeachment evidence; consequently, the State violated its obligations when it unintentionally[22] failed to disclose the police

---

[21]VRP 182-83.

[22]Linden assigns error to the trial court's finding that the State unintentionally violated CrR 4.7. Although this assignment of error is not dispositive on appeal, and considering that the prosecutor: (1) received the report the very morning of trial; (2) was under the belief that Linden's counsel was aware of the arrest, since he had originally informed the prosecutor of the incident; and (3) first requested a side-bar to discuss the matter with the court and defense counsel before impeaching the defendant, we find the court acted reasonably and within its discretion in finding the State acted under a misinterpretation of the discovery rules and its violation was unintentional.

report to Linden as soon as the State confirmed the report's existence.[23]

Appropriate CrR 4.7 Remedy

Linden complains that the trial court erred in granting a continuance rather than a mistrial where the State disclosed the February 10 arrest evidence midway through Linden's impeachment, although it possessed the information before Linden took the stand. He argues that mistrial was the only viable sanction available to the court because his case hinged on his credibility since he bore the burden of proving his unwitting possession defense by a preponderance of the evidence. But the State disagrees, comparing this case to the circumstances presented in *State v. Falk*.[24]

As discussed earlier, in *Falk* we held that granting a continuance rather than a mistrial for a CrR 4.7 violation occurring during rebuttal was well within the court's discretion and consistent with CrR 4.7(h)(7)(i).[25] Particularly, we noted that mistrial was a "drastic measure," and the trial court acted reasonably in deciding instead to give the defendant time to decide how best to respond to the newly divulged damaging evidence.[26]

As in *Falk*, this case involves evidence within the defendant's knowledge—Linden knew he was arrested in Seattle before trial and his counsel informed the prosecutor of the arrest—but the defendant didn't know this evidence was in the prosecutor's possession. Like *Falk*, the trial court here granted the defense a continuance to decide how to respond to this "new" impeachment evidence. Linden distinguishes *Falk*, however, because the confession there was

---

[23]Linden also argues that the Agreed Omnibus Order compelled disclosure of the police report. But because the trial court's finding is reasonable under CrR 4.7 alone, we need not decide whether the Order established independent grounds for discovery violation.

[24]17 Wn. App. 905, 567 P.2d 235 (1977).

[25]*Id.* at 908.

[26]*Id.*

for the charge at trial, while here the police report concerned a pending charge in another county.

Of particular concern for Linden, however, was that if he offered an explanation for the impeachment evidence, he might incriminate himself on this pending charge. Thus, he argues that unlike *Falk*, he was given a Hobson's choice that only mistrial could cure. Although this distinction is perhaps an important one, we consider that when a criminal defendant places his character at issue by testifying as to past good behavior, he is vulnerable to impeachment with specific "bad acts" unrelated to the current charges.[27] And when discussing possible remedies with the trial court, Linden conceded that any justification or explanation he might offer would be consistent with his earlier testimony.[28]

Another distinction Linden argues is that in *Falk*, the new evidence was clearly admissible, but here, the police report didn't need to be admitted and it could have been avoided by more careful questioning. But the court took a recess to consider this additional distinction and instead ruled that Linden and Falk were in substantially the same situation. We find this approach particularly appropriate to the extent it may deter defendant perjury. Consequently, a continuance and opportunity to decide how best to counter the State's impeachment may be preferred to mistrial. Indeed, although the distinctions between *Falk* and this case are fine, the trial court carefully weighed these distinctions before ruling. Aware of the discretion afforded to the trial court in this area, we affirm the court's decision, finding it acted within that discretion.

Fifth Amendment Waiver

▇▇▇ Linden also contends that because of the State's CrR 4.7 violation, his Fifth Amendment and article I, sec-

---

[27]*See State v. Brush*, 32 Wn. App. 445, 448, 648 P.2d 897 (1982) (citing *State v. Renneberg*, 83 Wn.2d 735, 522 P.2d 835 (1974); *State v. Studebaker*, 67 Wn.2d 980, 986, 410 P.2d 913 (1966); *State v. Emmanuel*, 42 Wn.2d 1, 14, 253 P.2d 386 (1953); *State v. Ternan*, 32 Wn.2d 584, 591, 203 P.2d 342 (1949)).

[28]VRP 199.

tion 9 waiver was unintelligent and, therefore, invalid.[29] Particularly, the State's nondisclosure prevented him from making informed choices about whether to testify and what "doors" to open. Although Linden raises this argument for the first time on appeal, we review it under RAP 2.5(a)(3) as a manifest error affecting a constitutional right.

Linden's argument, however, fails on other grounds. First, "[n]aked castings into the constitutional sea" will not sustain a constitutional assignment of error.[30] Here, Linden cites the general proposition that waiver must be voluntary, knowing, and intelligent, but then makes conclusory statements without supporting authority to demonstrate how this discovery violation impeded effective waiver.[31] But even if we found these general statements sufficiently supported his arguments, Linden's position fails because under *Dutil v. State*,[32] the critical question is whether or not the defendant knows of her right not to speak, not whether she precisely appreciates the risks of talking.[33] There, the Court found no "right to be told the advantages and disadvantages of exercising . . . [Fifth Amendment] rights."[34] Applying this analysis, we conclude that the prosecutor's discovery violation did not invalidate Linden's otherwise voluntary, knowing, and intelligent waiver.

We affirm.

---

[29]Linden also argues that if we find defense counsel below improperly raised his waiver of constitutional rights issue, failing to preserve it on appeal, then he was denied fair trial for ineffective assistance of counsel. But because the record demonstrates he adequately objected at trial, we do not reach this ineffective assistance of counsel issue.

[30]*See In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986) (citing *United States v. Phillips*, 433 F.2d 1364 (8th Cir. 1970)).

[31]*See* RAP 10.3(a)(5).

[32]93 Wn.2d 84, 90, 606 P.2d 269 (1980).

[33]*Id.*

[34]*Id.*

COLEMAN and ELLINGTON, JJ., concur.

Reconsideration denied March 20, 1998.

Review denied at 136 Wn.2d 1018 (1998).