IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31921-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAIME HERNANDEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Under CrR 8.3, a defendant may move the trial court to

dismiss the charges against him or her when government misconduct prejudicially affects

the defendant's right to a fair trial. Jaime Hernandez claims the trial court erred when it

denied his CrR 8.3 motion to dismiss. He argues that the State delayed in having samples

of his Deoxyribonucleic acid (DNA) tested such that Mr. Hernandez was unable to

properly refute the evidence while still receiving a speedy trial. He further contends that

the court erred when it denied his motion to exclude the DNA evidence. Finally, Mr.

Hernandez argues his United States Constitution Sixth Amendment right to confront

witnesses against him was violated when the DNA analyst who performed the tests was

not the DNA analyst who testified at trial. We conclude that because there was no

government misconduct, the court properly denied Mr. Hernandez's CrR 8.3 motion for

dismissal. Further, exclusion of the DNA evidence was not warranted under *State v.*

*Hutchinson*, 135 Wn.2d 863, 881, 959 P.2d 1061 (1998). Finally, his Sixth Amendment claim fails under *State v. Lui*, 179 Wn.2d 457, 462, 315 P.3d 493 (2014), *cert. denied*, 134 S. Ct. 2842 (2014). Because there was no error, we affirm Mr. Hernandez's conviction.

## FACTS AND PROCEDURAL BACKGROUND

On March 27, 2011, 15-year-old K.H. was home in her Kennewick apartment with her dad. K.H.'s mother was in Seattle caring for a sick relative. That evening, K.H. went to sleep in her own bed and later awoke to find her underwear and pajamas pulled halfway down her leg and to feel something wet and hard between her anus and her vagina. She turned around and saw her father, Jaime Hernandez, laying behind her. K.H. immediately told her father to leave. After Mr. Hernandez left the room, K.H. pulled her underwear up and cried herself to sleep.

The next morning, K.H. did not shower or change her clothes before leaving for school; instead, while walking to school, K.H. called her mother, Maria Hernandez, and told her what happened. Ms. Hernandez promptly left Seattle and drove back to Kennewick. Ms. Hernandez picked K.H. up from school and together they drove to the police station where K.H. reported what had occurred the previous night. Officer Valdez collected K.H.'s underwear and stored the evidence in a sealed bag in the Kennewick Police Department's evidence locker. The following morning, K.H. went to Kadlec

2

Hospital where a rape kit was performed. The hospital returned the rape kit to the Kennewick Police Department and it, too, was stored as evidence.

Officers attempted to locate Mr. Hernandez, however, he was not at his residence and he did not attend a scheduled meet up with Ms. Hernandez. Unable to locate Mr. Hernandez, the Kennewick Police Department forwarded the case to the county prosecutor in August of 2011, and the State filed an information charging Mr. Hernandez with third degree child molestation. Evidence suggested that Mr. Hernandez fled to either California or Seattle.

Over a year later, on November 19, 2012, Mr. Hernandez was arrested on the outstanding warrant resulting from this case. He was arraigned the next day, and trial was set for January 14, 2013.

While Mr. Hernandez was in custody awaiting trial, the State obtained and executed a search warrant for four buccal swabs from Mr. Hernandez. The rape kit, underwear, and Mr. Hernandez's buccal swabs were submitted to the Washington State Patrol Crime Laboratory for DNA comparison on December 13, 2012. Mr. Hernandez's counsel received a return of search warrant dated December 21, 2012.

On January 7, 2013, because Mr. Hernandez's trial was set for January 14 and it appeared the DNA report would not be completed until sometime between January 10 and 14, the State moved for a short continuance. Mr. Hernandez opposed the motion to continue and moved the court to dismiss the charges under CrR 8.3. The court denied

3

Mr. Hernandez's motion to dismiss and granted the State's motion, rescheduling trial for January 22.[1]

On January 9, 2013, after the continuance was granted, the lab completed the DNA report and provided the results to the State. Immediately upon receipt, the State forwarded the report to defense counsel.

Mr. Hernandez then moved the court to exclude the DNA results, arguing that allowing the DNA results to be admitted into evidence at trial would be unjust because his counsel could not prepare to refute the evidence in such a short time. The court denied Mr. Hernandez's motion to exclude, informing Mr. Hernandez he could request a continuance himself—waiving his right to a speedy trial—but if Mr. Hernandez did not request a continuance, the court was prepared to go to trial on January 22 as scheduled and admit the DNA evidence. Mr. Hernandez elected to request a continuance, aware the trial could be delayed as much as six months.

The trial was continued until June 2013. At trial, Erica Graham, a supervising forensic scientist with the DNA section of the Washington State Patrol Crime Laboratory, testified about the results of the DNA tests performed by her peer, Anna Wilson. The

---

[1] Mr. Hernandez's speedy trial time expired on Saturday, January 19. The State argued—and the court agreed—that because the time expired on a Saturday and Monday, January 21 was Martin Luther King Day (a court holiday), the deadline extended to January 22.

jury found Mr. Hernandez guilty of child molestation in the third degree and Mr. Hernandez timely appealed.

## ANALYSIS

Mr. Hernandez assigns error to the trial court's denial of his motion to dismiss as well as the denial of his motion to exclude evidence. Mr. Hernandez further alleges he was denied his right to confront witnesses against him. Each of these arguments will be addressed in turn.

### *I. CrR 8.3 Motion to Dismiss*

Mr. Hernandez contends the trial court should have dismissed the charges against him under CrR 8.3(b). As the basis for his argument, he asserts that the State violated CrR 4.7 when it delayed providing him with the DNA evidence, and that the delay amounted to government misconduct. He further argues that the government misconduct associated with the delay in conducting and providing analysis of the DNA evidence was prejudicial to him—namely, that it impeded his rights to a speedy trial and to effective assistance of counsel because he was implicitly forced to choose one right to the preclusion of the other.

CrR 8.3(b) provides:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.

5

In order to succeed on a CrR 8.3(b) motion to dismiss, the defendant must prove both governmental misconduct and prejudice to his right to a fair trial by a preponderance of the evidence. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). The denial of a motion to dismiss made under CrR 8.3 is reviewed for abuse of discretion and will be overturned only if the trial court's decision was manifestly unreasonable or based on untenable grounds. *State v. Wilson*, 149 Wn.2d 1, 9, 65 P.3d 657 (2003).

"Absent a showing of arbitrary action or governmental misconduct, a trial court cannot dismiss charges under CrR 8.3(b)." *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). Governmental misconduct "'need not be of an evil or dishonest nature; *simple mismanagement is sufficient.*'" *Id.* at 239-40 (quoting *State v. Blackwell*, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993)).

In order to justify dismissal, a defendant must also show actual prejudice; the mere possibility or speculation of prejudice will not suffice. *Rohrich*, 149 Wn.2d at 657-58. "Such prejudice includes the right to a speedy trial and the 'right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense.'" *Michielli*, 132 Wn.2d at 240 (quoting *State v. Price*, 94 Wn.2d 810, 814, 620 P.2d 994 (1980)).

Here, *State v. Cannon*, 130 Wn.2d 313, 922 P.2d 1293 (1996) is instructive. In *Cannon*, trial was set for February 11 and the defendant's speedy trial time expired on February 19. 130 Wn.2d at 320. Prior to trial, the State requested a second DNA sample

6

from the defendant because the initial sample was unusable; as a result, the trial did not occur on February 11. *Id.* On two occasions the State requested uncontested continuances and trial was continued until February 27. *Id.* On February 27, the State moved for a third continuance. *Id.* This time, the defendant opposed the motion. *Id.* The State admitted that the prosecutor's office had not yet received the results of the DNA analysis, but indicated that it believed it would be prepared to go to trial the next day. *Id.* The defendant moved to dismiss for violations of his right to a speedy trial as well as discovery abuse and case mismanagement. *Id.* at 320-21. The court denied both motions to dismiss. *Id.* at 321.

On appeal, the defendant in *Cannon* argued that the trial court's denial of his motion to dismiss "effectively denied him the opportunity to adequately prepare his defense" and that "[d]ismissal . . . was warranted under CrR 4.7 and CrR 8.3." 130 Wn.2d at 327-28. The court was "not persuaded that these incidents . . . constitute[d] discovery abuses." *Id.* at 328. Further, the court noted that even if the delay was a discovery abuse, the defendant suffered no prejudice. *Id.* at 328-29. The defendant failed to show how receipt of the final report was necessary to begin investigating the analysis techniques used at the DNA lab. *Id.* at 329. The court found that "[b]ecause no new facts relevant to those procedures were interjected into the case by the reports, it cannot be said that the delay caused him to have to choose between his right to a speedy trial and his right to effective assistance of counsel." *Id.*

7

In this case, Mr. Hernandez was arraigned on November 20 and the State obtained and executed a search warrant for his DNA by December 13.[2] Mr. Hernandez's counsel was provided with declarations from the investigators and a return of search warrant for Mr. Hernandez's DNA on December 19 and 21. Further, the completed results from the DNA analysis were promptly emailed to Mr. Hernandez's counsel. Defense counsel had the results to the DNA analysis no later than January 10, 2013. There was no mismanagement of evidence. The court did not abuse its discretion in finding there was no government misconduct.

Even assuming that the State's actions did constitute misconduct, Mr. Hernandez suffered no prejudice. Both Mr. Hernandez and his counsel should have been aware that DNA would be an issue in this case. They both had knowledge of the preexisting rape kit. Further, defense counsel had confirmation that Mr. Hernandez's DNA was being used for comparison no later than December 21, when he received the return of search warrant. Defense counsel could have begun looking into the techniques and procedures

---

[2] Mr. Hernandez argues that the State's delay in testing the rape kit and underwear against his own DNA was manifestly unreasonable. He appears to argue that because the State had access to his apartment through Ms. Hernandez, it could have obtained a sample of his DNA from one of his belongings there. He fails to explain how law enforcement would have known what DNA found in the apartment was his. Had the State obtained Mr. Hernandez's DNA as he suggests, the DNA evidence would not be credible at trial. Accordingly, it was not manifestly unreasonable for the State to wait and obtain a DNA sample from Mr. Hernandez's person, even though that required waiting over a year and a half to do so. Delay, if any, was a result of Mr. Hernandez absconding from the jurisdiction.

employed by Washington State Patrol Crime Laboratory prior to receiving a finalized report. Because the final DNA report received by Mr. Hernandez's counsel did not inject any new facts into the case, Mr. Hernandez suffered no prejudice.

Mr. Hernandez failed to show any government misconduct resulting in prejudice to his right to a fair trial. The trial court did not abuse its discretion in denying his CrR 8.3(b) motion to dismiss.

## II. CrR 4.7 Motion to Exclude

Mr. Hernandez next contends the trial court erred when it denied his motion to exclude the DNA evidence. Citing CrR 4.7(h)(7)(i), Mr. Hernandez argues that justice required the exclusion of the DNA evidence because admission of the evidence compelled Mr. Hernandez to forego his right to a speedy trial in order to receive effective assistance of counsel.

CrR 4.7 governs discovery in criminal cases. "While CrR 4.7(h)(7)(i) does not enumerate exclusion as a remedy [for a discovery violation], it does allow a trial court to 'enter such other order as it deems just under the circumstances.' This language allows the trial court to impose sanctions not specifically listed in the rule." *Hutchinson*, 135 Wn.2d at 881 (quoting CrR 4(h)(7)(i)).

When deciding whether exclusion is an appropriate sanction for a party's failure to comply with an order, courts should consider "(1) the effectiveness of less severe sanctions; (2) the impact of witness preclusion on the evidence at trial and the outcome of

9

the case; (3) the extent to which [the other party] will be surprised or prejudiced by the

witness's testimony; and (4) whether the violation was willful or in bad faith."

*Hutchinson*, 135 Wn.2d at 882-83 (citing *Taylor v. Illinois*, 484 U.S. 400, 415 n.19, 108

S. Ct. 646, 98 L. Ed. 2d 798 (1988)). As our Supreme Court noted in *Hutchinson*,

> Cases interpreting CrR 4.7(h)(7)(i) have typically involved the failure to produce evidence or identify witnesses in a timely manner. *See, e.g., State v. Linden*, 89 Wn. App. 184, 947 P.2d 1284 (1997) (holding trial court acted within its discretion when granting continuance to defense for prosecution's late disclosure of information). Violations of that nature are appropriately remedied by continuing trial to give the nonviolating party time to interview a new witness or prepare to address new evidence.

*Id.* at 881.

Rulings pertaining to discovery are within the discretion of the trial court and will

not be disturbed on appeal absent an abuse of discretion. *State v. Yates*, 111 Wn.2d 793,

797, 765 P.2d 291 (1988).

Here, at the hearing on Mr. Hernandez's motion to exclude, the court stated:

> One of the questions that I have is really what more could the State have done in this particular case? And I really don't see what more the State could have or should have done under these facts.
> . . . .
> . . . And the State has indicated that if Mr. Hernandez, in fact, wishes to have [defense counsel] conduct additional testing, they're not going to object to that request to continue the trial. That would require Mr. Hernandez to waive his right to speedy trial to accommodate additional testing. But that's his choice. You can certainly go forward to trial without that, if Mr. Hernandez does not wish to have you continue the trial.

Report of Proceedings (Jan. 18, 2013) at 16-18.

In applying the *Hutchinson* factors to determine whether exclusion is an appropriate remedy, we find: the trial court provided Mr. Hernandez with the opportunity to continue trial as a remedy for the timing of the DNA results; the impact of precluding the evidence at trial would have been severe, likely turning the case into a "he said, she said" situation; Mr. Hernandez was previously aware of the pending DNA test, so he could not be surprised that the State intended to use it; and the State acted in good faith, providing the evidence as promptly as possible under the circumstances. All factors weigh against excluding the evidence. Consequently, the court did not abuse its discretion in denying Mr. Hernandez's motion to exclude the DNA evidence.

*III. Sixth Amendment Right to Confront Witnesses*

Finally, Mr. Hernandez contends the trial court violated his constitutional right to confront witnesses against him when it permitted an expert witness to testify to the results of a DNA test conducted by another analyst. Conceding our Supreme Court reached the opposite conclusion in *State v. Lui*, 179 Wn.2d at 462, Mr. Hernandez asks this court to adopt the dissent's analysis in *Lui* and find that the court erred in admitting the DNA evidence.

While, this court reviews alleged violations of the confrontation clause de novo, *State v. Jasper*, 174 Wn.2d 96, 108, 271 P.3d 876 (2012) (citing *Lilly v. Virginia*, 527 U.S. 116, 137, 119 S. Ct. 1887, 144 L. Ed. 2d 117 (1999)), "the Court of Appeals is bound to follow precedent established by [Washington's Supreme Court.]" *1000 Virginia*

11

No. 31921-1-III
*State v. Hernandez*

*Ltd. P'ship v. Vertecs Corp.*, 158 Wn. 2d 566, 590, 146 P.3d 423 (2006), *as corrected*
(Nov. 15, 2006).

In *Lui*, the court explained that "experts may rely on DNA profiles created by
other laboratory analysts when concluding there is a DNA match without violating the
confrontation clause." 179 Wn.2d at 483. Here, Erica Graham testified to the results of
the DNA tests conducted by Anna Wilson. Because this court is bound to follow
precedent established by Washington's Supreme Court, Ms. Graham's testimony did not
violate Mr. Hernandez's rights under the confrontation clause.

We affirm.

A majority of the panel has determined this opinion will not be printed in the
Washington Appellate Reports, but it will be filed for public record pursuant to RCW
2.06.040.

Siddoway, C.J.

WE CONCUR:

Korsmo, J.

Brown, .J.

12