

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,          )
                                        )        No.  35167-0-III
              Respondent,        )
                                          )
    v.                             )
                                          )
JOSHUA DAVID AVALOS,        )        UNPUBLISHED OPINION
TOMAS MIGUEL LOPEZ and RAFAEL   )
D. OCHOA, JR.,                )
                                          )
              Defendants,         )
                                          )
ALFREDO LEONELL SILVA DIAZ,   )
                                          )
              Appellant.          )

FEARING, J. — Alfredo Silva Diaz challenges his convictions for fourth degree assault and prison riot resulting from his attack on a fellow prisoner.  He assigns error to the trial court's permission of testimony surrounding a document never produced in discovery and the trial court's refusal to deliver a self-defense jury instruction.  Since the trial court allowed limited testimony regarding the document in rebuttal to Silva Diaz's counsel's questions and did not admit the document as an exhibit, and since evidence did not support a self-defense jury instruction, we affirm.

FACTS

Alfredo Silva Diaz is an inmate at Grant County Jail where he shared cell four with Miguel Lopez. Joshua Avalos resided in cell two in the same jail dorm with roommate Rafael Ochoa. An inmate is kept in his cell twenty-three hours a day and is given one hour outside his cell on a rotating schedule with other inmates. Inmates on break can talk to or pass notes to other inmates presently inside a cell.

On September 30, 2016, Corrections Officer Justin Grubb returned Miguel Lopez from court to his jail cell shared with Alfredo Silva Diaz. Joshua Avalos and Rafael Ochoa then enjoyed their hour of release from their shared cell. Officer Grubb did not return Avalos and Ochoa to their cell before returning Lopez to his cell. Grubb, concerned about a fight, twice asked Lopez if he had any problems with Avalos or Ochoa. Both times, Lopez remained silent but rolled his eyes.

Despite enjoying his one hour of break time, Joshua Avalos sat in his cell with the door closed, but unlocked so that Avalos could open the door at his own accord. As Corrections Officer Justin Grubb unlocked Alfredo Silva Diaz's cell door, Avalos exited his cell, turned toward Silva Diaz's cell, and assumed a defensive stance. Officer Grubb recognized the stance as a preattack posture that could lead to a physical altercation. When Grubb opened the door to Miguel Lopez's and Silva Diaz's cell door, Silva Diaz stepped toward the officer as if to ask a question. Silva Diaz instead darted from his cell toward Avalos. Grubb attempted to grab Silva Diaz as Silva Diaz dove past him in order

2

to reach Avalos, but to no avail. Silva Diaz and Avalos fought. As Officer Grubb chased Silva Diaz and Avalos, Lopez ran toward Rafael Ochoa, who had just re-entered the dorm area, and attacked him. Grubb unsuccessfully attempted to end the fight between Silva Diaz and Avalos, but received punches instead. Grubb sought to call for help on his radio but his radio was knocked off during the struggle. He then stepped back and tased Silva Diaz. Grubb also pointed the Taser at Avalos, who surrendered.

## PROCEDURE

The State of Washington charged Joshua Avalos and Alfredo Silva Diaz with prison riot and assault in the fourth degree. The State tried Avalos and Silva Diaz together. Avalos requested a bench trial, whereas Silva Diaz proceeded to a jury trial. Prior to trial, in a demand for discovery, Silva Diaz requested all discovery required by court rule and all Grant County Jail reports. In his supplemental motion for discovery, Silva Diaz requested from the State his criminal history and all law enforcement reports. The State responded in its "Compliance with Omnibus Order and CrR 4.7(a)" that it had produced all applicable documents and records. Clerk's Papers (CP) at 94.

Before trial, the trial court granted a motion in limine that restricted any evidence or reference to law enforcement agents' prior contacts with Silva Diaz. This ruling prohibited any references from law enforcement databases such as one commonly referred to as "Spillman." CP at 29.

3

At trial, the State sought to introduce evidence through Corrections Officer Justin Grubb that Alfredo Silva Diaz had previously been sanctioned for fighting in jail. The State requested admission as an exhibit a sanction report. The State argued that the exhibit proved an element of the crime of prison riot, because the State needed to show that Silva Diaz knew of the jail's order not to fight. Unfortunately, the State had not provided Silva Diaz with this infraction record or notice of intent to use the record.

Alfredo Silva Diaz objected to the State's use of the sanction report on the ground that the State failed to disclose the information and that it violated the motion in limine that prohibited discussion of prior contact with law enforcement and earlier detentions. The trial court sustained the objection since the infraction record was not previously disclosed and because it was evidence of prior bad acts. The court, however, allowed the State to identify that such a policy existed. Corrections Officer Justin Grubb then testified that fighting violated jail policy and the inmates have access to a handbook that describes all of the jail rules. Silva Diaz's counsel asked Officer Grubb if he advised Silva Diaz of the rules when Silva Diaz was booked into jail, to which he responded no.

The State renewed its request to introduce evidence that Silva Diaz had been advised of the jail's policy against fighting. The State argued that Silva Diaz opened the door by asking Grubb if he had advised Silva Diaz of the policy. Alfredo Silva Diaz denied that he opened the door because his questioning related only to the issuance of the handbook. Silva Diaz also argued against introduction of the evidence because the State

4

was now using the information to establish an element of the crime, which it could have

presented in its case-in-chief. Further, Silva Diaz argued the State sought to refresh

Officer Justin Grubb's memory based on hearsay since he did not issue the sanction

against Silva Diaz for fighting, was not present when the written sanction was prepared,

and was not the custodian of the sanction report. Silva Diaz noted that the written

sanction, that the State sought to introduce, was not the original and was not signed by

either himself or a law enforcement officer.

When the State renewed its attempt to introduce as an exhibit the written sanction

report, Alfredo Silva Diaz mainly objected to introduction of the report based on

nondisclosure of the evidence. Silva Diaz argued the discovery violation prejudiced him.

Silva Diaz also argued that the trial was already into two or three levels of redirect and

re-cross when the State sought to insert the information. Defense counsel did not have

the opportunity to review the sanction with Silva Diaz. Crucial parts of the trial had

already passed, such as jury selection and calling witnesses, and, if Silva Diaz had known

the State would seek introduction of the sanction, he might have conducted his earlier

defense differently. Finally, defense counsel noted his trial strategy and closing argument

would need to be modified and that he could not effectively modify the strategy during

the fifteen minutes allowed for him to review the sanction report.

Alfredo Silva Diaz asked for a one-day continuance, or alternatively, due to

scheduling, a mistrial. The trial court refused to grant either. Instead, the court extended

5

the recess to one hour for Silva Diaz's counsel to review the withheld sanction report with Silva Diaz. Silva Diaz and his counsel then reviewed the sanction report for the first time, although the State still would not afford the two their own copy. After reviewing the sanction information, Silva Diaz renewed all his objections. Defense counsel explained that the report referenced two incidents, the second of which resulted in criminal charges. Counsel emphasized that the record incorporated Alfredo Silva Diaz's criminal history, which the order in limine prohibited mention of criminal history, and the State should have disclosed the record in discovery. Counsel also observed that the document did not indicate whether Silva Diaz had been warned not to fight, the reason for which the State offered the document as an exhibit.

The trial court overruled Alfredo Silva Diaz's objection and allowed the State to ask Corrections Officer Justin Grubb, based on the Grant County Jail sanction record, whether Silva Diaz had previously been informed that fighting was against jail policy. Grubb thereby testified that Silva Diaz had been sanctioned and, as a result of the sanction, had been informed of the jail's policy against fighting.

After closing, Alfredo Silva Diaz submitted self-defense jury instructions to the court. Silva Diaz contended that, when Corrections Officer Justin Grubb opened Silva Diaz's cell while Joshua Avalos was on break, Grubb placed Silva Diaz in a position where he needed to attack or be attacked himself. Silva Diaz argued a self-defense instruction was also warranted because a video recording showed that, before the fight,

6

Avalos walked by Silva Diaz's cell and made hand gestures that could be interpreted as threatening communications. A recording also showed Avalos sitting in his cell waiting, as if prepared for a fight. Silva Diaz emphasized Grubb's testimony that Avalos entered a pre-attack mode. Lastly, Silva Diaz highlighted a dispute existed as to who hit who first and that Silva Diaz's advance toward Avalos did not prove Silva Diaz as the assaulter. The trial court denied the self-defense instruction on the lack of facts to support a theory of self-defense.

The jury convicted Silva Diaz as charged. The trial court sentenced Silva Diaz to a standard range sentence of twenty-four months' confinement.

## LAW AND ANALYSIS

### Discovery Violation

The issue is whether the trial court abused its discretion when allowing Corrections Officer Justin Grubb to testify to the earlier sanction of Alfredo Silva Diaz for fighting in the jail.

The trial court has wide discretion in ruling on discovery violations. *State v. Linden*, 89 Wn. App. 184, 189-90, 947 P.2d 1284 (1997). These decisions will not be disturbed on appeal unless the court abused its discretion. *State v. Linden*, 89 Wn. App. at 190. Abuse of discretion occurs if the trial court's exercise of discretion was manifestly unreasonable, or exercised on untenable grounds, or made for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Even if

7

the court committed error, the appellant must demonstrate that the error materially affected the outcome of the trial. *State v. Linden*, 89 Wn. App. at 190. The potential prejudice resulting from noncompliance with the discovery rules lies in the defense's ability to properly anticipate and prepare. *State v. Brush*, 32 Wn. App. 445, 455, 648 P.2d 897 (1982).

CrR 4.7 governs criminal discovery. *State v. Pawlyk*, 115 Wn.2d 457, 471, 800 P.2d 338 (1990). The rule requires a prosecutor to disclose to the defendant, no later than the omnibus hearing, any documents, papers, photographs, or other objects that may be used in the prosecutor's case. CrR 4.7(a)(1)(v). This disclosure is a continuing obligation on the State. CrR 4.7(h)(2). The State's duty applies to evidence whether it be considered for use in the State's case-in-chief, for rebuttal, for impeachment purposes, or in some other way. *State v. Falk*, 17 Wn. App. 905, 908, 567 P.2d 235 (1977). But, even when illegally obtained statements are suppressed, the State may introduce evidence of the statement to rebut a statement the defendant makes at trial. *State v. Greve*, 67 Wn. App. 166, 171-72, 834 P.2d 656 (1992).

This state construes the rules of criminal discovery liberally in order to serve the purposes underlying CrR 4.7, which are, to provide adequate information for informed pleas, to expedite trial, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process. *State v. Copeland*, 89 Wn. App. 492, 497, 949 P.2d 458 (1998). CrR 4.7(h)(7)(i) lists sanctions for the prosecutor's

noncompliance with discovery requests. If at any time during the course of the proceedings the court finds that a party failed to comply with an applicable discovery rule, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action, or enter such other order it deems just under the circumstances. CrR 4.7(h)(7)(i).

Alfredo Silva Diaz argues the trial court erred by allowing the State to use the jail sanctions report that the State failed to disclose during discovery. Due to the discovery violation, Silva Diaz asked for a mistrial or a one-day continuance, which the court denied. Silva Diaz now argues the court erred by denying both options. The State of Washington argues the court did not err because it gave defense counsel an hour to review a two-page document and adjust his trial strategy accordingly. Also, the State justifies use of the document, despite never giving notice of its existence, as rebuttal to a statement or inference made by defense counsel.

When the State expressed its desire to introduce the sanction record, the court denied the State's request, in part, because the document was never produced in discovery. Then, defense counsel elicited testimony from Corrections Officer Justin Grubb that implied Silva Diaz had no knowledge of the jail's handbook of rules, including the rule against fighting. Finding defense counsel opened the door, the court then allowed the State to ask a narrow and pointed question regarding the sanction record and whether inmates are informed of the rule against fighting after being sanctioned. The

court did not allow the document to be introduced into evidence, and the State did not use the document for any other purpose. The court thereby properly allowed use of the document for impeachment purposes.

Alfredo Silva Diaz cannot show that the State's use of the document to question Corrections Officer Justin Grubb materially affected the outcome of the trial. While Silva Diaz was not granted a day's continuance, he was granted an hour to review the short document with counsel. This allowed time for defense counsel to recoup and adjust any trial strategy. Silva Diaz does not demonstrate how his earlier strategy would have differed if he knew the State would have introduced the evidence.

Alfredo Silva Diaz argues use of the document for questioning purposes materially affected the outcome because the document related directly to an element of the crime. Yet, Silva Diaz also told the trial court that the document was irrelevant and should not be used for questioning because it did not state that Silva Diaz had been informed of the rule against fighting. A document cannot be both irrelevant and materially affect an outcome of the trial. Nonetheless, we view the document as nonprejudicial because common sense dictates that fighting would be against jail rules.

## Self-Defense

The issue is whether sufficient evidence supported the rendering of a self-defense jury instruction. The trial court's decision to give a jury instruction is reviewed for abuse of discretion if based on a matter of fact. *Kappelman v. Lutz*, 167 Wn.2d 1, 6, 217 P.3d

10

286 (2009). If the trial court merely decides whether the record contains the kind of facts to which a doctrine applies, the review is abuse of discretion. *Kappelman v. Lutz*, 167 Wn.2d at 6.

The State charged Alfredo Silva Diaz with fourth degree assault. Fourth degree assault includes the intentional harmful or offensive touching of another person regardless of whether it results in physical injury. *State v. Tyler*, 138 Wn. App. 120, 130, 155 P.3d 1002 (2007). A person acts in self-defense when he or she reasonably believes that he or she is about to be injured, and he or she uses no more force than necessary to prevent an offense against her person. RCW 9A.16.020(3).

To determine whether a defendant is entitled to an instruction of self-defense, the trial court must view the evidence from the standpoint of a reasonably prudent person who knows all the defendant knows and sees all the defendant sees. *State v. Read*, 147 Wn.2d 238, 242, 53 P.3d 26 (2002). When assessing a self-defense claim, the trial court applies both a subjective and objective test. *State v. Read*, 147 Wn.2d at 242-43. The trial court is justified in denying a request for a self-defense instruction only when no credible evidence appears in the record to support a defendant's claim of self-defense. *State v. Roberts*, 88 Wn.2d 337, 346, 562 P.2d 1259 (1977). Mutual combat is not a defense to fight in a jail. *State v. Weber*, 137 Wn. App. 852, 860, 155 P.3d 947 (2007).

We agree with the trial court that evidence did not support a self-defense claim. Alfredo Silva Diaz argues that Joshua Avalos can be seen passing by Silva Diaz's cell

11

making threatening hand gestures. Yet, the video recording of the incident does not show that occurred. Silva Diaz also emphasizes Corrections Officer Justin Grubb's testimony that Avalos was in an attack stance once Officer Grubb opened Silva Diaz's cell and that Silva Diaz had to attack or be attacked. Nevertheless, self-defense was not a viable theory because Silva Diaz could have stayed in his cell and no fight would have occurred. Silva Diaz charged at Avalos and Silva Diaz dove past Grubb in order to reach Avalos. Silva Diaz was then not in immediate danger of being attacked.

## CONCLUSION

We affirm Alfredo Silva Diaz's convictions.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, C.J.

12